UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ERICA J.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:21cv183 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's applications for a period of disability, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, § 1383(c)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the hands and wrists; major depressive disorder; generalized anxiety disorder; and an unspecified trauma and stressor based disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift, carry, push, and/or pull a maximum of 10 pounds, with occasional lifting, carrying, pushing, and/or pulling of lesser weights. After sitting for 30 minutes, the claimant requires the opportunity to stand for 2 minutes at her workstation. The claimant is limited to standing no more than 20 minutes at a time. The claimant requires the use of cane when ambulating, with ambulation essentially limited to getting to and from a workstation at the beginning and end of the workday, and at breaks and mealtime. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to frequent handling and fingering with the bilateral upper extremities. The claimant is limited to no concentrated exposure to wetness, no concentrated exposure to hazards (dangerous moving machinery and unprotected heights), and no operation of motorized vehicles. The claimant is able to understand, remember, carry out instructions, and exercise judgment, to perform simple tasks. The claimant is limited to routine and repetitive work, performing essentially the same tasks in the same place every day. The claimant is limited to no fast-paced assembly line work or piece-rate work with strict hourly quotas. The claimant is limited to occasional interaction with the public, but nothing more involved than answering a discrete question, such as the location of an item in a store or a room in a hotel. The claimant can have occasional interaction with co-workers, but cannot perform tandem work or team tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 8, 1976 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-21).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on November 15, 2021. On December 3, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on January 10, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

On August 9, 2016, Plaintiff presented to Sheel Patel, M.D., with wrist pain and low back pain. (Tr. 481.) Plaintiff reported her wrist pain had been progressively worsening and caused severe functional limitations. (Tr. 81.) Plaintiff also reported low back pain which she rated as a ten out of ten in intensity, as well as bilateral lower extremity pain, numbness, and tingling. (Tr. 481.) Dr. Patel's examination showed Plaintiff exhibited moderate to severe pain with range of motion maneuvers of the lumbar spine. (Tr. 483.) Imaging of the lumbar spine showed a small right paracentral disc protrusion abutting the S1 root nerve at L5-S1; and bilateral facet degeneration, minimal disc bulge, and mild central stenosis at L4-L5. (Tr. 484, 486.) Dr. Patel determined that Plaintiff suffered from lumbar spondylosis, degenerative disc disease, spinal stenosis, and displacement of the lumbar intervertebral disc. (Tr. 484.) These findings were affirmed in September and November 2016 (Tr. 492-93, 496-97), as well as January and March 2017. (Tr. 510, 516.) Plaintiff also received block injections during the November 2016 examination. (Tr. 497.)

On May 19, 2017, Plaintiff presented to Adrian Sonevytsky, M.D., for wrist and low back pain. (Tr. 523.) She reported her back pain was an eight out of ten on the pain scale and caused her functional limitations. (Tr. 523.) Plaintiff also reported her wrists pain was progressively worsening. (Tr. 523.) Dr. Sonevytsky's examination showed Plaintiff's ambulation was guarded, she had severe pain on range of motion of the lumbar spine, and significant pain with range of motion of both wrists. (Tr. 523.) He diagnosed Plaintiff with lumbar spondylosis, degenerative disc disease, displacement of the lumbar intervertebral disc, and joint pain of the hands. (Tr. 523-24.)

On June 27, 2017, imaging of Plaintiff's lumbar spine showed mild degenerative disc disease at L4-L5 and L5-S1. (Tr. 606, 621-22.) On October 10, 2017, Plaintiff received a transforaminal epidural steroid injection of the lumbar spine. (Tr. 537-38.)

On March 2, 2018, Plaintiff reported to Dr. Sonevytsky that she continued to have severe lower back pain with radicular pain extending down to both of her lower extremities. (Tr. 542.) Dr. Sonevytsky noted Plaintiff was guarded with ambulation and continued to have severe pain with range of motion of the lumbar spine. (Tr. 542.) He affirmed his diagnosis of lumbar spondylosis, degenerative disc disease, and displacement of the lumbar intervertebral disc. (Tr. 542-43.) Dr. Sonevytsky recommended Plaintiff receive another epidural steroid injection. (Tr. 543.)

On September 28, 2018, state agency psychological consultant Ann Lovko, Ph.D., reviewed Plaintiff's medical file and found that Plaintiff's mental impairments were non-severe and she had mild limitations in all four areas of mental functioning. (Tr. 89, 100.)

On October 30, 2018, Plaintiff presented to R. Gupta, M.D., for a consultative

examination. (Tr. 597-600.) Plaintiff reported she suffered from severe pain, numbness, and tingling in her hands which caused her difficulty with grasping and gripping items. (Tr. 597.) Plaintiff also reported severe pain in the lower back which caused her to be unable to walk or stand for long periods of time. (Tr. 597.) Dr. Gupta's examination showed Plaintiff had spinous and paraspinal tenderness in the lumbar region with decreased range of motion. (Tr. 599, 601.) Dr. Gupta observed Plaintiff had an antalgic gait and ambulated with a cane. He also noted Plaintiff was unable to completely stoop, squat or walk heel to toe tandemly. (Tr. 599.) Dr. Gupta opined Plaintiff was unable to perform work related activities such as sitting, standing, walking, lifting, carrying and handling objects due to pain throughout her body. (Tr. 599.)

On October 31, 2018, state agency medical consultant J. Sands, M.D., reviewed Plaintiff's medical file and found her capable of performing light work, except she could stand or walk for a total of two hours per day, and sit for six hours; and she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 92, 103.) Dr. Sands also opined Plaintiff should avoid concentrated exposure to wetness and hazards. (Tr. 92-93, 103-04.)

On November 6, 2018, Plaintiff presented to the emergency department for a gunshot wound to the scalp. (Tr. 643-44.) Imaging of Plaintiff's head showed soft tissue injury in the area of the bullet and no foreign body was detected. (Tr. 644.) The injury was determined to be primarily an abrasion. (Tr. 644.) Plaintiff was also assessed to have suffered a traumatic subarachnoid hemorrhage and a concussion without loss of consciousness. (Tr. 644.) These findings were affirmed by J.V. Corcoran, M.D., on July 11, 2019. (Tr. 117-19, 132-33.)

On June 19, 2019, Plaintiff presented to Kathryn Meyer, Ph.D., for a consultative psychological examination. (Tr. 675-78.) Plaintiff reported she was shot in the head in November

7

2018, and she had since experienced ringing in her ears and tenderness of the impacted area. (Tr. 675.) Plaintiff reported depression symptoms including mood swings, emotional numbness, low appetite, insomnia, anhedonia, low self-esteem, and thoughts of death. (Tr. 675.) Plaintiff reported anxiety symptoms including nervousness and nausea. (Tr. 676.) She also reported nervousness when doing things outside of her home. (Tr. 676.) Plaintiff reported it "takes[s] a while" for her to handle personal care and household activities. (Tr. 678.) She reported she needs help with cleaning, cooking, and laundry due to physical and emotional problems. (Tr. 678.) Plaintiff reported she interacts poorly with others and tends to avoid other people. (Tr. 678.) Dr. Meyer found Plaintiff appeared to meet the criteria for a diagnosis of major depressive disorder. (Tr. 678.) She opined Plaintiff appeared capable of being around others regarding work-related activities, but she was likely limited in her abilities interpersonally. (Tr. 678.) Dr. Meyer also opined Plaintiff was capable of simple, repetitive tasks that did not require standing or lifting; she would likely require a limited or flexible work schedule until she received effective mental health services; and her ability to sustain concentration, persistence, and social interaction were slightly impaired. (Tr. 678.)

On July 8, 2019, Plaintiff presented to M. Siddiqui, M.D., for a consultative examination. (Tr. 680-82.) Plaintiff reported she intermittently has pain in her hands and feet due to osteoarthritis. (Tr. 680.) Plaintiff had lower back pain radiating to her right leg. (Tr. 680.) Dr. Siddiqui's examination showed Plaintiff had a mild limp in her gait, and had mild distress and some difficulty getting on and off the exam table. (Tr. 681.) Dr. Siddiqui observed Plaintiff had tenderness and swelling of both hands, as well as limited range of motion of the lumbosacral spine. (Tr. 681.) Dr. Siddiqui assessed Plaintiff had intermittent pains of the hands and feet, low

8

back pain, and a history of carpal tunnel syndrome. (Tr. 682.) Dr. Siddiqui did not render an opinion regarding Plaintiff's functional limitations. (Tr. 680-82.)

On July 15, 2019, state agency psychological consultant Kari Kennedy, Psy.D., reviewed Plaintiff's medical file and found she had moderate limitations in concentration, persistence, or maintaining pace. (Tr. 116, 131.) Specifically, she found Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods. (Tr. 120, 135.) Dr. Kennedy opined Plaintiff can understand, remember, and carry out detailed, but not complex tasks; she can relate on a superficial and ongoing basis with coworkers and supervisors; she can attend to tasks for sufficient periods; and she can manage the stresses involved in detailed work-related tasks. (Tr. 121, 136.)

On December 12, 2019, Plaintiff presented to Shaan H. Khan, M.D., for back pain radiating to the right leg. (Tr. 769.) Plaintiff also reported mild weakness in the right leg which worsens when standing. (Tr. 769.) Dr. Khan's examination showed antalgic gait on the right side, and reduced strength of the lower extremities. (Tr. 772.) Dr. Khan also found Plaintiff had limited flexion due to pain and spasms. (Tr. 772.) He diagnosed Plaintiff with lumbar radiculopathy and spondylosis. (Tr. 772.) Dr. Khan affirmed these findings in February, March, April, and May 2020. (Tr. 734, 740, 749, 755, 761.)

At a hearing held January 6, 2020, Plaintiff testified to the following: At her previous job as a babysitter, the most she could lift was fifteen pounds. (Tr. 59.) Plaintiff's babysitting job was part-time, and she worked four to five days per week. (Tr. 59.) She stopped babysitting because she could no longer lift the children due to issues with her back, hips, wrists, and feet. (Tr. 63.) Plaintiff's back pain starts in the lower back and extends to her right hip and leg. (Tr. 63-64.) Her

9

pain is constant and worsens with motion. (Tr. 64.) Plaintiff had received injections in her back, but they only made the issue worse and caused the pain to extend to her leg. (Tr. 64.) Plaintiff has a cane that she uses every time she leaves her home. (Tr. 64.) Plaintiff's wrists are also constantly in pain and swollen. (Tr. 66.) This causes issues with Plaintiff's ability to hold objects or perform tasks involving her hands, as she feels the need to stop and massage her hands. (Tr. 66.) Plaintiff also has ringing in her ears following a traumatic head injury. (Tr. 66.) Plaintiff does not like to interact with other people, and will try to make trips to the store as quick as possible. (Tr. 68.) Plaintiff estimates she can stand for 20 minutes, and sit for 20 to 30 minutes. (Tr. 69-70.) Plaintiff also estimates she can walk half a block. (Tr. 71.) Plaintiff testified she needs help lifting or carrying things, and she also needs assistance performing household tasks. (Tr. 71.) She will also use a motorized scooter to get around when shopping. (Tr. 75.)

  The vocational expert (VE) testified to the following: Plaintiffs' past work can be classified as child monitor (DOT 301.677-010), and hand packager (DOT 920.587-018). (Tr. 77.) An individual of Plaintiff's age, education, work experience, and RFC would be unable to perform Plaintiff's past relevant work. (Tr. 78-79.) Such an individual would be able to perform work as a final assembler (DOT 713.687-018), eyewear polisher (DOT 713.684-038), and addresser (DOT 209.587-010). (Tr. 80.) An employer would tolerate no more than one absence per month, and no more than ten percent off task time. (Tr. 80-81.) If an individual were also limited to occasional handling and fingering, there would be no jobs available. (Tr. 82-83.)

  In support of remand, Plaintiff argues that the ALJ failed to adequately develop the record, rendering his RFC determination unsupported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and it is determined by assessing all the relevant

evidence. 20 C.F.R § 416.945(a)(1). The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week." Social Security Ruling (SSR) 96-8p.

While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.2000). A claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider, to prove that the ALJ's failure was harmful. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997); *see Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994) ("Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant.").

Here, as discussed above, in his consultative examination Dr. Gupta opined Plaintiff was unable to perform work related activities such as sitting, standing, walking, lifting, carrying and handling objects due to pain throughout her body. (Tr. 599.) The ALJ found that Dr. Gupta's examining opinion was unpersuasive because it was vague and did not provide specific functional limitations. (Tr. 18.) The ALJ then found that the non-examining state agency opinions were "somewhat persuasive," concluding their limitation to light work was not restrictive enough. (Tr. 18.) The ALJ ultimately concluded Plaintiff was capable of a reduced range of sedentary work. (Tr. 15-16.) Plaintiff argues that by finding her limitations to be more restrictive than those opined by state agents (Tr. 18), and by finding Dr. Gupta's opinion unpersuasive (Tr. 17), it was unclear how the ALJ came to craft the physical RFC.

In finding the state agency opinion "somewhat persuasive," the ALJ stated "[Plaintiff]" is

11

limited to lifting, standing and walking of sedentary work, as well as is given postural and environmental limitations, to accommodate for increased pain and decreased mobility as a result of the claimant's spine disorder and osteoarthritis of her hands/wrists." (Tr. 18.) The ALJ went on to cite the various medical records from which he extracted this conclusion. (Tr. 18.) Plaintiff contends that the ALJ came to this conclusion through his own interpretation of the medical record.

Plaintiff asserts that the ALJ had a duty to either order a new consultative physical evaluation or re-contact an existing examiner, such as Dr. Gupta. Plaintiff points out that during the October 2018 examination, Plaintiff reported to Dr. Gupta she suffered from severe pain, numbness, and tingling in her hands which caused her difficulty with grasping and gripping items. (Tr. 597.) Plaintiff also reported severe pain in the lower back which caused her to be unable to walk or stand for long periods of time. (Tr. 597.) Dr. Gupta's examination showed Plaintiff had spinous and paraspinal tenderness in the lumbar region with decreased range of motion. (Tr. 599, 601.) Dr. Gupta observed Plaintiff had an antalgic gait and ambulated with a cane. He also noted Plaintiff was unable to completely stoop, squat or walk heel to toe tandemly. (Tr. 599.)

Plaintiff further asserts that Dr. Gupta's findings were also consistent with other evidence on the record. For example, in March 2018, Dr. Sonevytsky's examination showed Plaintiff was guarded with ambulation and continued to have severe pain with range of motion of the lumbar spine. (Tr. 542.) He diagnosed Plaintiff with lumbar spondylosis, degenerative disc disease, and displacement of the lumbar intervertebral disc. (Tr. 542-43.) In July 2019, Dr. Siddiqui's examination showed Plaintiff had a mild limp in her gait, and had mild distress and some difficulty getting on and off the exam table. (Tr. 681.) Dr. Siddiqui observed Plaintiff had

12

tenderness and swelling of both hands, and limited range of motion of the lumbosacral spine. (Tr. 681.) Dr. Siddiqui assessed Plaintiff had intermittent pains of the hands and feet, low back pain, and a history of carpal tunnel syndrome. (Tr. 682.) Additionally, in December 2019, Dr. Khan's examination showed antalgic gait on the right side, and reduced strength of the lower extremities. (Tr. 772.) Dr. Khan also found Plaintiff had limited flexion due to pain and spasms. (Tr. 772.) He diagnosed Plaintiff with lumbar radiculopathy and spondylosis. (Tr. 772.) Dr. Khan affirmed these findings in February, March, April, and May 2020. (Tr. 734, 740, 749, 755, 761.) Plaintiff concludes that there was evidence on the record showing Dr. Gupta's opinion, although vague, was supported by his examination notes and consistent with other evidence on the record, further compounding the ALJ's error in failing to develop the record by requesting clarification on the opined limitations.

      This Court finds Plaintiff's argument's to be well-taken. Dr. Gupta's opinion at least arguably indicated Plaintiff had disabling limitations in her abilities to sit, stand, walk, lift, and carry and handle objects due to pain throughout her body. (Tt. 599.) The ALJ found the only other opinions of record were not restrictive enough and attempted to fill that void by inserting his own interpretations. The Commissioner acknowledges that Dr. Gupta's opinion was ambiguous, but claims that the ALJ was able to determine, based on other evidence in the record, that Plaintiff was not disabled. The Commissioner cites to the ALJ decision at Tr. 15-19. This Court has carefully reviewed the decision and finds it lacking. The ALJ did a quick run-through of various medical evidence, often without citation to the record and without naming the doctor whose opinion he was discussing. The ALJ then made random conclusions that various limitations were accounted for in the RFC, while admitting to assessing more restrictive limitations than indicated

13

in the medical opinions. (Tr. 18). Due to this confusion, the ALJ should have developed the record by re-contacting Dr. Gupta, or another doctor, for clarification on Plaintiff's limitations, because her limitations might be even greater than the ALJ assessed which could qualify her for benefits. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.2000). Thus, this matter will be remanded.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: January 13, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court
